1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT
                               WESTERN DISTRICT OF WASHINGTON
9                                        AT TACOMA

10

11   WILLIAM AKOWSKEY and KELLY          CASE NO. 3:15-cv-05571-RJB
     AKOWSKEY,

12                                       ORDER ON DEFENDANTS'
                        Plaintiff,       MOTION FOR SUMMARY

13                                       JUDGMENT
            v.

14
     BOMBARDIER RECREATIONAL
15   PRODUCTS, INC. and BRP US, INC,

16                      Defendant.

17

18          THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment.

     Dkt. 35. The Court has considered Defendants' motion, Plaintiffs' Response (Dkt. 48), and
19
     Defendants' Reply (Dkt. 54-1). The Court granted the parties leave to file responsive briefing for
20
     Defendants' request to strike Plaintiff William Akowskey's declaration (Dkts. 58, 61, 64; *see*
21

22

23

24

1  Dkts. 54-1 at 9-11, 63), which the Court has considered, along with the remainder of the file

2  herein.[1]

3                                I.        BACKGROUND

4         This case stems from injuries sustained by Plaintiff William Akowskey in a 2015 Sea-

5  Doo Spark 2UP ("jet ski") incident. Plaintiffs allege that Defendants defectively designed and

6  constructed the jet ski handlebar, and that Defendants failed to warn of the defect and breached

7  implied warranties. *See* Second Amended Complaint at ¶¶4.1-4.4.

8     a.  Jet ski incident.

9         At Mr. Akowskey's deposition, he narrated the following incident, which occurred a

10  couple days after he and Plaintiff Kelly Akowskey purchased the jet ski:

11         I was making a right turn and I hit a small wake, or I would say a medium wake or—I hit
           a wake. It wasn't big . . . At that point it threw me, okay, and then it popped me up in the
12         air, and then I hit my face down on the handlebars. I remember doing that approximately
           about three times. And it snapped. The handlebar snapped, and I hit my face again and
13         slung me off into the water. I woke up in the water with the . . . handlebar in my hand as a
           death grip on it.
14
   Dkt. 36-1 at 21. *See also*, *id.* at 22, 23, 26-29. Mr. Akowskey's declaration, submitted as an
15
   attachment to Plaintiffs' Response, states:
16
           2. . . . I told [Mrs. Akowskey] . . . that as I came down off the top of a wake or a wave,
17         the Sea-Doo's handlebar buckled or broke and so I lost the support of my arms, so then it
           hit me in the head three times, and then I was thrown into the water, and woke up with
18         my hand with a death grip on the throttle end of the handlebar which had broken off.
           Shortly before I called [Mrs. Akowskey], I told my friend Saif Muhya the same things. I
19         was telling them the truth, based on what had just recently happened to me a few minutes
           before. . .
20
           10. In the [jet ski] crash, if the handlebar of the 2015 Sea-Door Spark 2UP had not
21         cracked and failed as it did, I believe I would not have been hit in the face by the jet ski
           and would not have been thrown from the jet ski into the water."
22

23  _____

24         [1] The Court has not considered Plaintiffs' deposition errata, which were stricken. Dkt. 55.

11. During the crash sequence, after the jet ski hit my face three times, I was still conscious. After I hit the water, I lost consciousness briefly. When I hit the water, the impact on my head, neck and the rest of my body was very hard, and felt much harder and more violent than any of the impacts of the jet ski steering column on my face.

Dkt. 50 at ¶¶2, 10, 11. *See also*, Dkt. 54-1 at 9.

Mrs. Akowskey testified that "immediately after the accident" Mr. Akowskey called her on the phone and recounted that "he was basically going over a wake and when he came down . . . the handlebar like kind of buckled, like—and then it made—it basically hit—he went forward and hit his head. . . He got thrown off . . . and then he kind of woke to [sic] in the water[.]" Dkt. 27-3 at 2. *See also*, Dkt. 49 at 2 ("The handlebar buckled, and then he hit his head repeatedly on it [and then] was thrown into the water."). Mrs. Akowskey observed Mr. Akowskey's face with "blood all over it. His nose and mouth area looked extremely swollen. His hand. . . looked like it was injured." *Id*.

Saif Muhya testified that Mr. Akowskey told him that "he hit the waves, and the—I don't know, bar or bar handle take out, you know, and he hit the bar and flew off. . . the handle was in his hand[.]" Dkt. 27-4 at 2. Similarly, Mr. Muyha testified to observing "blood everywhere . . . [on] his face." *Id*.

Dale Clark, Plaintiffs' expert, concluded that the handlebar fracture was "propagated in a downward direction, consistent with failure from a force applied downwards on the handles." Dkt. 27-7 at 5.

b. Jet ski product warnings.

According to Defendants' Rule 30(b)(6) witness, the 2014 Sea-Door Spark 2UP was recalled due to a defective handlebar. Dkt. 51-1 at 24, 25. The Akowskeys purchased the 2015 model of the same jet ski, which may have had the same design defect as the prior model. *Id*. Mr. Akowskey states in his declaration that after the jet ski purchase, before using it, he "took off all

1  the bar code stickers and read all the labels on the jet ski." Dkt. 50 at 3. Although he did not read

2  the jet ski Operator's Guide prior to the incident, he did not observe any warning on the jet ski

3  informing him of risks associated with a defective handlebar. However, Mr. Akowskey's

4  declaration states, "He would have seen and read [warnings] before [he] used the jet ski in the

5  water and would not have operated [it] . . . at all, for fear that the manufacturer may not have

6  adequately addressed the problem that led to the [2014] recall." *Id.*

7      Mrs. Akowskey's declaration similarly states that she would not have agreed to purchase

8  the jet ski in spite of a warning "intended to reassure a consumer" because she would be

9  concerned that "a serious problem might still exist, . . . the manufacturer may not have correctly

10 or fully addressed the problem, and . . . defects  . . . might go undetected by the manufacturer[.]"

11 Dkt. 49 at 3. Mrs. Akowskey states that after the jet ski incident she read the Operator's Guide,

12 which makes no mention of a handlebar defect. *Id*. at 3.

13          II.      SUMMARY JUDGMENT STANDARD

14      Summary judgment is proper only if the pleadings, the discovery and disclosure materials

15 on file, and any affidavits show that there is no genuine issue as to any material fact and that the

16 movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is

17 entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

18 showing on an essential element of a claim in the case on which the nonmoving party has the

19 burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of

20 fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

21 the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

22 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

23 metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a

24

1  material fact exists if there is sufficient evidence supporting the claimed factual dispute,

2  requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

3  *Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

4  *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

5       The determination of the existence of a material fact is often a close question. The court

6  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

7  e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect.*

8  *Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor

9  of the nonmoving party only when the facts specifically attested by that party contradict facts

10 specifically attested by the moving party. The nonmoving party may not merely state that it will

11 discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

12 to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

13 Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

14 be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

15                                  III.     DISCUSSION

16       As a threshold matter, the Court will first address Defendants' request to strike Mr.

17 Akowskey's declaration, followed by the merits of the underlying motion for summary

18 judgment. Defendants raise three main issues in the underlying motion: (1) causation, (2) implied

19 primary assumption of risk, and (3) the failure to warn claim.

20 **A. Defendants' request to strike Mr. Akowksey's declaration.**

21       In Defendants' Reply, Defendants request that Mr. Akowskey's declaration be stricken as

22 a sham affidavit. Dkt. 54-1 at 9-11. According to Defendants, the sequence related in ¶¶2 and 10

23 of Mr. Akowskey's declaration directly and materially contradicts his deposition, and the

24

1  declaration was filed to defeat Defendants' motion for summary judgment. *Id*. In further briefing,

2  Defendants repeat prior arguments about ¶¶2 and 10, but also argue that ¶11 should be stricken,

3  an issue that Defendants maintain was raised by footnote 7 of Defendants' Reply. Dkt. 64 at 6, 7.

4  *See* Dkt. 54-1 at 11:1 and 13:26.

5      Plaintiffs argue that Mr. Akowskey's declaration is corroborated by other disinterested

6  witnesses, Mr. Muyha and Mrs. Akowskey, so Mr. Akowskey's declaration does not by itself

7  create an issue of material fact. Dkt. 58-1 at 2, 3. Further, Plaintiffs argue, the contradictions are

8  minor and not direct, and the rationale for the sham affidavit rule, to facilitate "the efficacy of

9  summary judgment as a judicial resolution mechanism," is not served, because resolving

10 Defendants' summary judgment does not hinge on consideration of the declaration. *Id*. at 3-5.

11 Finally, Plaintiffs argue, striking the declaration would amount to a credibility finding by the

12 Court that is better left in the hands of the jury. *Id*. at 6, 7.

13     The sham affidavit rule precludes a party from creating an issue of fact by submitting an

14 affidavit contradicting prior deposition testimony. *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262,

15 266 (9th Cir.1991). "If a party who has been examined at length on deposition could raise an

16 issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would

17 greatly diminish the utility of summary judgment as a procedure for screening out sham issues of

18 fact." *Id*. citing *Foster v. Arcata Assoc.*, 772 F.2d 1453, 1462 (9th Cir. 1985). However, "[i]t must

19 be recognized that the sham affidavit rule is in tension with the principle that a court's role in

20 deciding a summary judgment motion is not to make credibility determinations or weigh

21 conflicting evidence." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998–99 (9th Cir. 2009).

22 The rule "does not automatically dispose of every case in which a contradictory affidavit is

23

24

1    introduced . . . rather, the district court must make a factual determination that the contradiction

2    was a sham." *Id*. The contradiction must be clear and unambiguous. *Id*.

3         As discussed with relation to Defendants' argument about causation, *see below*, striking

4    Mr. Akowskey's declaration would not resolve the underlying summary judgment motion in

5    favor of Defendants. Defendants' strenuous argument to the contrary ignores this Court's

6    obligation to make reasonable inferences in favor of Plaintiffs. Nonetheless, Mr. Akowskey's

7    declaration should not be stricken as a sham. Inconsistencies can be reconciled either because of

8    their consistency with the testimony and declarations of Mrs. Akowskey, or because they are

9    inconsequential to Defendants' motion for summary judgment.

10        Mr. Akowskey's declaration states that "as [he] came down off the top of a wake. . . the

11   [jet ski's] handlebar buckled or broke and so I lost the support of my arms, so then [the jet ski]

12   hit me in the head three times[.]" This sequence of events could be interpreted to conflict with

13   ¶¶2 and 10 of Mr. Akowskey's deposition testimony, but importantly, the sequence is

14   corroborated by Mrs. Akowskey's deposition testimony and declaration. Dkts. 27-3 at 2 and 49

15   at 2. Mrs. Akowskey testified that Mr. Akowskey told her that "he was basically going over a

16   wake and when he came down  . . . the handlebar like kind of buckled, like—and then it made—

17   it basically hit—he went forward and hit his head. . . He got thrown off . . . and then he kind of

18   woke to [sic] in the water[.]" *Id*. Although Mrs. Akowskey did not personally witness the

19   accident, she talked to Mr. Akowskey "immediately after[wards]." *Id*. At most, Mr. Akowskey's

20   declaration serves to bolster other evidence that defeats the causation issue raised by Defendants.

21        Defendants also request to strike ¶11 of Mr. Akowskey's declaration. Defendants'

22   request should not be considered, because ¶11 was not properly raised in Defendants' Reply.

23

24

1    Defendants' argument to the contrary strains a reasonable reading of their briefing. *See* Dkt. 54-1

2    at 11:1 and 13:26.

3        A finding that Mr. Akowskey's declaration amounts to a sham would, in this case,

4    amount to a credibility finding better reserved for the jury. Defendants' request to strike Mr.

5    Akowskey's declaration should be denied.

6    **B. Causation.**

7        Defendants argue that Plaintiffs cannot show proximate cause as a matter of law, because

8    "the entire crux of Plaintiffs' case rests on the timing of when the [jet ski] handlebar broke." Dkt.

9    35 at 13. Defendants point to the sequence of events retold at Mr. Akowskey's deposition, where

10   he repeatedly testified that the right handlebar broke only after he had ridden a wave, which

11   threw him into the air three times, causing his head to strike the center console three times. These

12   facts, Defendants contend, "destroy causation as a matter law and render any alleged [handlebar]

13   defect . . . factually irrelevant," because assuming this sequence, Mr. Akowskey would still have

14   hit his face and sustained the same injuries even if the handlebar had not snapped. *Id*. Further,

15   Defendants argue, holding liable manufacturers and distributors for injuries not connected to

16   product defects should be precluded as a matter of public policy, because the "mere fact of injury

17   does not entitle [recovery]." *Id*. at 14, 15, citing to *Baughn v. Honda Motor Co.*, 107 Wn.2d 127

18   (1986).

19       Plaintiffs argue that there is at least an issue of material fact as to whether the defective

20   handlebar caused Plaintiffs' injuries. Plaintiffs direct the Court to Mr. Akowskey's deposition,

21   Mr. Akowskey's deposition errata (which were stricken as untimely and are not considered for

22   purposes of this motion), Mr. Akowskey's declaration, Mr. Muhya's deposition, Mrs.

23   Akowskey's deposition and declaration, and Mr. Dale Clark's expert report. Dkt. 48 at 14-19.

24

1    Plaintiffs contend in the alternative that even if the handlebar maintained full structural integrity

2    until after Mr. Akowskey's head hit the jet ski console three times, Mr. Akowskey's impact with

3    the water resulted in other injuries proximately caused by the handlebar defect. *Id*. at 18. To the

4    extent that Mr. Akowskey's deposition testimony conflicts with his declaration, Plaintiffs urge

5    the Court to refrain from a credibility finding better presented to the jury. *Id*.

6         Proximate cause "is defined as a cause which, in a direct sequence, unbroken by any new,

7    independent cause, produces the injury complained of and without which the injury would not

8    have occurred." *Fabrique v. Choice Hotels Intern. Inc.*, 144 Wn.App. 675, 683 (2008).

9    Proximate cause is comprised of (1) cause in fact, which refers to the "but for" consequences of

10   an act, and (2) legal causation, which "rests on policy considerations as to how far the

11   consequences of a defendant's acts should extend [and] involves a determination of whether

12   liability should attach as a matter of law[.]" *Hartley v. State*, 103 Wn.2d 768, 778-79. (1985).

13   Causation is ordinarily an issue for the jury, except where "the evidence is undisputed and only

14   one reasonable conclusion is possible." *Id*.

15        Issues of fact remain as to causation, even without considering Mr. Akowskey's

16   declaration.  Plaintiffs' expert, Dale Clark, concluded that the handlebar fracture was

17   "propagated in a downward direction, consistent with failure from a force applied downwards on

18   the handles." Dkt. 27-7 at 5. Consistent with that conclusion, Mrs. Akowskey testified that

19   "immediately after the accident" Mr. Akowskey told her that "he was basically going over a

20   wake and when he came down  . . . the handlebar like kind of <u>buckled</u>, like—and then it made—

21   it basically hit—he went forward and hit his head. . . He got thrown off . . . and then he kind of

22   woke to [sic] in the water[.]" Dkt. 27-3 at 2 (emphasis added). Mr. Muhya testified that Mr.

23   Akowskey told him that "he hit the waves, and the—I don't know, bar or bar handle take out,

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 9

1   you know, and he hit the bar and flew off. . . the handle was in his hand[.]" Dkt. 27-4 at 2.

2   Construing these facts in Plaintiffs' favor, a reasonable juror could find that the handlebar defect

3   was the proximate cause of Mr. Akowskey's injuries, including those sustained prior to his fall

4   from the jet ski.

5       Defendants argue that summary judgment is warranted because Plaintiffs cannot

6   differentiate between the injuries caused before and after Mr. Akowskey's fall from the jet ski,

7   making it impossible to segregate damages caused by Mr. Akowskey (pre-fall) and Defendants

8   (post-fall). Dkt. 35 at 16, 17. This argument assumes the sequence of events offered at Mr.

9   Akowskey's deposition. However, assuming the sequence of events in Mrs. Akowskey's

10  testimony, where the handlebar first "buckled," then Mr. Akowskey hit his head and was thrown

11  off, segregating damages would be unnecessary because Defendants could be liable for all

12  injuries.

13      Defendants' argument also fails because even if Defendants are only liable for post-fall

14  injuries, there is no showing that pre-fall and post-fall injuries are indistinguishable. Defendants

15  rely on *Scott v. Rainbow Ambulance Service, Inc.*, 75 Wn.2d 494 (1969), a case where the

16  plaintiff's attorney stated that "it is absolutely medically impossible for anyone to know to what

17  extent [the plaintiff] was injured in her first fall . . . and to what extent she was injured in her

18  second fall [caused by the defendant]." Unlike *Scott*, in this case, Plaintiffs have made no such

19  concession. Plaintiffs argue the opposite, for example, by pointing to Mr. Akowskey's facial

20  lacerations (pre-fall) and unconsciousness (post-fall), which is supported by Mr. Akowskey's

21  testimony and his declaration. Dkts. 36-1 at 21 (bloody face), 30 ("slung off…woke up in the

22  water"); and 50 at 2 ("lost consciousness briefly"). Based on the evidence at trial, Defendants

23  may wish to renew their argument, but at this juncture, dismissal is not appropriate.

24

1       An issue of fact remains as to causation. On this issue, Defendants' motion should be

2 denied.

3     **C. Implied primary assumption of risk.**

4       Defendants argue that they had no duty to protect Mr. Akowskey from the "inherent risks

5 of riding a [jet ski] on water through waves/wakes which jar the occupant up and down . . .

6 and/or [of] falling . . . into the water." Dkt. 35 at 20. *See* Dkt. 54-1 at 13. According to

7 Defendants, these risks are inherent in the sporting activity itself, and to eliminate them would

8 alter the fundamental nature of the sport. *Id*.

9       Plaintiffs argue that the implied primary assumption of risk doctrine is inapplicable,

10 because a defective handlebar is not an inherent risk to the sport. In other words, the doctrine

11 applies, Plaintiffs contend, only if the Court concludes that Mr. Akowsky's injury was not

12 caused by any product defect, but rather was caused by Mr. Akowskey's jet ski operation.

13       The Court concurs with Plaintiffs. The doctrine of implied primary assumption of risk

14 only applies if the Court decides the issue of causation in favor of Defendants, which it has not

15 done. *See above*. Because there are issues of material fact surrounding causation, dismissal under

16 this doctrine is not warranted.  On this issue, Defendants' motion should be denied.

17     **D. Failure to warn claim.**

18       Defendants argue that Plaintiffs' failure to warn claim fails as a matter of law because

19 Plaintiffs cannot establish any causal link between Plaintiffs' injuries and a deficient warning.

20 Defendants contend that "the only evidence Plaintiffs can proffer . . . is testimony from the

21 parties or their experts that they *would have* read and heeded a different warning," Dkt. 34 at 21,

22 23 (emphasis added), which is "the textbook example of inadmissibly speculative and self-

23 serving testimony[.]" *Id*. citing to *Kloepfer v. Honda Motor Corp.*, 898 F.2d 1452, 1459 (10th

24

1   Cir. 1990) (affirming exclusion of lay witness testimony when based on unhelpful conjecture,

2   not perception). Defendants' Reply argues that even if the subject jet ski had proper warnings,

3   the cause of Mr. Akowskey's injury was not the defective handlebar, but rather was Mr.

4   Akowskey's decision to operate the jet ski over a wave. Dkt. 54-1 at 4.

5         Plaintiffs argue that "[a]dequate warning of the handlebar design's recent dangerous

6   history would have resulted in no purchase," Dkt. 48 at 2, or at least "more gentle . . . operation"

7   of the jet ski. *Id*. at 14. Plaintiffs' argument is based on the declarations of Mr. Akowskey and

8   Mrs. Akowskey, which state that because of their fear of injury, they would not have bought or

9   used the jet ski if there had been notice of a defective handlebar. *Id*. at 3-5. Plaintiffs differentiate

10   *Kloepfer*, which had "foundational infirmities" not present in this case and liken this case to two

11   unreported district court cases, *Bear v. Ford Motor Co.*, 2007 WL 445934 (E.D.Wash. 2007) and

12   *Chamberlain v. Ford Motor Co.*, 369 F.Supp.2d 1138, 1145 (N.D.Cal. 2005). *Id*. at 5-9.

13         The failure to warn claim should not be dismissed at summary judgment because

14   Plaintiffs have made a sufficient showing of proximate cause. Both cause in fact and legal

15   causation are satisfied where facts are construed in favor of Plaintiffs: (1) Mr. Akowskey

16   personally removed all bar code stickers and warning labels from the jet ski after its purchase,

17   (2) Plaintiffs were not informed of Defendants' recall of a similar model by means of a

18   prominent flyer, tag or other notice, and (3) if Plaintiffs had known of the defect, they would not

19   have purchased the subject jet ski. Dkt. 49 at 3; Dkt. 50 at 2, 3. "But for" the failure to warn

20   Plaintiffs of the defect, Plaintiffs would not have purchased the subject jet ski with the defective

21   handlebar. The question of legal causation "rests on policy considerations," *Hartley*, 103 Wn.2d

22   778, which weigh against summary dismissal.

23

24

1    Defendants also make what amounts to an evidentiary challenge to the claim, arguing that

2  it should be dismissed because Plaintiffs' declarations, which form the basis of the claim, are

3  speculative under ER 701. However, the plain text of RCW 7.72.030 invites consumers to hold

4  manufacturers liable for not doing what they could have done. *See* RCW 7.72.030(1)(b) ("could

5  have provided the warnings . . . [that] would have been adequate"). *See Ayers v. Johnson &*

6  *Johnson Baby Products Co.*, 117 Wn.2d 747, 754 (1991) (If baby oil had proper warning label,

7  plaintiff-mother would have kept product out of reach from plaintiff-infant). Plaintiffs, as the

8  persons who purchased the subject jet ski, are well-positioned to state what warnings they would

9  have heeded, which is well within their purvey of their "perception." *See* ER 701. Defendants

10 also take issue with Plaintiffs' declarations as self-serving. While Plaintiffs' declarations align

11 with their interests in the outcome of the case, that does not necessarily preclude their

12 admissibility. Plaintiffs are parties to the case; their declarations are unsurprising, if not

13 predictable.

14    Defendants rely on *Kloepfer*, a Tenth Circuit case that affirmed exclusion of the

15 plaintiff's testimony that she would not have allowed her six-year-old son to ride an ATV if the

16 vehicle had proper warning labels. Dkt. 54-1 at 8; *Kloepfer*, 898 F.2d at 1459. *Kloepfer* analyzes

17 ER 701 only briefly, and it is non-binding, out of district authority, whereas Plaintiffs' authority,

18 also non-binding, is at least within this district. More problematic for Defendants, however, is

19 that *Kloepfer* is an order affirming an evidentiary decision made during trial by a district court in

20 Salt Lake City, Utah. The opinion does not discuss the Washington statute at issue in this case

21 and its relationship to ER 701 at summary judgment.

22    Defendants also rely on *Hiner v. Bridgestone/Firestone, Inc.*, 138 Wn.2d 248, 258

23 (1999). In *Hiner*, the court affirmed dismissal of an inadequate warnings claim against a

24

1    defendant-tire manufacturer because the plaintiff-consumer's testimony "does not support her

2    bare assertion that she would not have placed the studded snow tires . . . even if warnings had

3    been imprinted on them. She did not read her owner's manual about snow tires, and did not

4    examine the snow tires for warnings." *Id*. While Plaintiffs admit that they did not read the

5    Operator's Guide, this case is distinguished from *Hiner*, because unlike the plaintiff-consumer in

6    *Hiner*, Mr. Akowskey states that he personally examined the jet ski and removed warning labels

7    prior to operating. Warnings need not be found in a handbook or manual to be "adequate" under

8    RCW 7.72.030(1). In fact, Plaintiffs need not even prove the exact wording of the warning

9    content. *Ayers*, 117 Wn.2d at 756.

10           On this issue, Defendants' motion should be denied.

11                                              * * *

12

13           Therefore, it is hereby **ORDERED** that:

14           (1) Defendants' Motion for Summary Judgment (Dkt. 35) is DENIED.

15           (2) Defendants' request to strike William Akowskey's declaration (Dkt. 54-1 at 9) is

16                DENIED.

17           The Clerk is directed to send uncertified copies of this Order to all counsel of record and

18    to any party appearing pro se at said party's last known address.

19           Dated this 19th day of October, 2016.

20

21

22           ROBERT J. BRYAN
             United States District Judge

23

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 14